UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAYFIELD ALLEN KIPER, | |
| Petitioner, | 3:06-cv-0242-PMP-RAM |
| vs. | **ORDER** |
| MIKE BUDGE, *et al.*, | |
| Respondents. | |

This action is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action comes before the Court on its merits. The Court also resolves petitioner's motion for summary judgment. (Docket #34).

**I.    Procedural History**

On December 2, 2004, petitioner was served with a notice of charges alleging one major violation (MJ-3, battery) and two general violations (G-1, disobedience and G-9, abusive language). (Exhibit 7, at Exhibit 1).[1] The notice alleged that on November 25, 2004, the following events took place: after returning his tray in the culinary at Nevada State Prison, petitioner walked toward

---

[1] The exhibits referenced in this order were provided by respondents in support of their motion to dismiss and are found in the Court's record at Docket #9 (Exhibits 1-17). Exhibit 18 is found in the Court's record at Docket #28.

1 Correctional Officer Williams; petitioner bent his left elbow and struck the officer in a deliberate
2 attempt to invoke a confrontation; Officer Williams ordered petitioner to stop, which he refused to
3 do until the officer yelled at him; petitioner pulled away from Williams, but permitted another
4 officer to handcuff him for escort; petitioner had been attempting to provoke the officer for the past
5 three months. (Exhibit 7, at Exhibit 1).

6      At the initial inquiry and disposition, petitioner pled not guilty to all charges and requested
7 several witnesses. At that time, petitioner stated that if he brushed Williams it was an accident and
8 unintentional, as he was in a hurry to get back to work. (Exhibit 7, at Exhibit 2).

9      On December 3, 2004, the first disciplinary hearing was held. (*Id.*, at Exhibit 3). Petitioner
10 pled not guilty to the charges. Petitioner acknowledged that he may have accidentally touched
11 Officer Williams, but stated that he was having heart palpitations and was dizzy, and that the
12 touching was to alert Williams to his high blood pressure. (*Id.*). The evidence included the officer's
13 report, the inmate's plea and statements, a statement that other officer witnesses had no information
14 regarding the incident, and a stipulation that inmate witnesses would agree with petitioner's
15 testimony. The hearing officer found petitioner guilty of MJ-3 (battery) and G-1 (disobedience), and
16 ordered 18 months in disciplinary segregation, and a Category-A statutory forfeiture referral. (*Id.*).

17      Petitioner appealed the decision with a first level grievance. (*Id.*, at Exhibit 5). Petitioner
18 claimed that Officer Williams fabricated the charges in retaliation for the dismissal of a prior
19 disciplinary charge. Petitioner claimed a lack of evidence that the battery was willfully intended and
20 claimed that he was denied the opportunity to call witnesses and prepare his defense because of a
21 lack of time between the service of the notice of charges and the hearing. (*Id.*).

22      On December 17, 2004, Warden Budge denied the appeal, noting that petitioner's own
23 statement that he brushed up against the officer and finding that he intentionally struck the officer
24 with his elbow. (*Id.*, at Exhibit 6). The Warden acknowledged that the 24-hour time frame was not
25 followed, but denied the appeal. (*Id.*).

26

1    Petitioner filed a second level grievance. (*Id.*, at Exhibit 7). On January 11, 2005, Assistant
2 Director of Prison Operations Cox ordered the matter reheard because petitioner did not have 24-
3 hours' notice prior to the hearing. (*Id.*, at Exhibit 8).

4    On February 10, 2005, the second disciplinary hearing took place. (*Id.*, at Exhibit 9).
5 Petitioner pled not guilty and made a statement similar to his prior hearing. Petitioner requested
6 multiple witnesses, including three correctional officers and all inmates present in the chow hall the
7 morning of November 25, 2004. The hearing officer approved the three correctional officers, but
8 denied the request for inmate witnesses as redundant. The hearing officer accepted a stipulation that
9 all of the inmates would agree with petitioner's testimony. Two of the officers testified that they did
10 not remember the incident or were not present. The hearing evidence included the officer's report
11 and petitioners' plea and statement. The hearing officer again found petitioner guilty of MJ-3 and
12 G-1. The hearing officer ordered twelve months of disciplinary segregation with credit for time
13 served and a Category-A statutory credit forfeiture referral. (*Id.*).

14    Petitioner again appealed with a first level grievance. (*Id.*, at Exhibit 11). Petitioner claimed
15 that the hearing officer refused to record hearing testimony. He claimed that caseworker Grafton
16 recommended the hearing officer find him guilty of battery. Petitioner also alleged that the hearing
17 officer failed to record Officer Williams' testimony that he was mistaken and that petitioner never
18 touched him. (*Id.*).

19    The Warden denied petitioner's appeal. (*Id.*, at Exhibit 12). The Warden found petitioner's
20 statements to be untrue. The disciplinary hearing was recorded except for petitioner's request for a
21 plea negotiation. Caseworker Grafton did not tell the hearing officer to find petitioner guilty of a
22 major violation. The Warden found that Officer Williams denied stating that he was mistaken and
23 that petitioner never struck him. (*Id.*, at Exhibit 12).

24    Petitioner filed a second level grievance. (*Id.*, at Exhibit 13). Petitioner claimed that the
25 battery (MJ-3) charge must be read with NRS 200.481, which requires additional elements of willful
26

3

and unlawful use of force. (*Id.*). Petitioner claimed that 99.9% of all MJ-3 charges within the prison system were also charged with assault (MJ-2). Once it was determined that petitioner could not be charged with assault, he claimed that he could not then be charged with battery. (*Id.*). Petitioner also claimed that the testimony of Officer Williams would have exonerated him, but since the hearing officer failed to activate the recorder, the evidence was lost. (*Id.*).

The Assistant Director denied the appeal and noted his agreement with the Warden's response. (*Id.*, at Exhibit 14). The Assistant Director disagreed with petitioner's understanding of the MJ-3 charge and the Code of Penal Discipline. (*Id.*). Petitioner received a Category-A forfeiture of 365 days due to the charges and his disciplinary history. (*Id.*, at Exhibit 15).

Petitioner filed a state habeas petition on July 3, 2005. (Exhibit 1). On November 15, 2005, the state court denied the petition. (Exhibit 10). Petitioner appealed. (Exhibit 12). The Nevada Supreme Court affirmed the district court's decision on March 16, 2006. (Exhibit 16). Remittitur issued on April 11, 2006. (Exhibit 17).

On April 25, 2005, petitioner dispatched his federal habeas petition to this Court. (Docket #4). Respondents filed a motion to dismiss Grounds 1, 2, and 4 of the petition. (Docket #8). On October 24, 2006, the Court denied the motion as to Grounds 1 and 4. (Docket #13). The Court dismissed petitioner's claim that the hearing officer erased recorded testimony, as set forth in Ground 2. (*Id.*). Petitioner abandoned his claim that the hearing officer erased recorded testimony, as set forth in Ground 2. (Docket #14). On December 20, 2006, respondents filed an answer. (Docket #16). On March 17, 2008, petitioner filed a motion for summary judgment. (Docket #34). The Court now turns to the merits of the remaining grounds of the petition.

**II.    Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

4

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501

5

U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Discussion

### A. Ground 1

Petitioner alleges that the NDOC definition of battery (MJ-3) violates due process. Petitioner argues that MJ-3 is not a complete charge because it does not include an "unlawfulness" element. (Docket #4, at p. 3). Petitioner contends that, as a result, he did not receive proper notice of the charge of battery. (*Id.*).

Pursuant to AR 707.05.1.5, the Code of Penal Discipline defines an MJ-3 battery as "[a]ny willful use of force or violence upon the person of another." NRS 200.481 defines battery as "any willful and unlawful use of force or violence upon the person of another." Because the definition of MJ-3 battery contains only a "willful" element, petitioner alleges that it is unconstitutional. There is no constitutional requirement that the NDOC adopt regulations that mirror the elements of state criminal statutes. As such, petitioner received ample notice of the MJ-3 battery charge in the notice of charges. Regarding this claim, the Nevada Supreme Court found and held:

> In his petition, appellant first contended that a charge of battery (MJ3) cannot stand alone without another charge, such as assault (MJ2). Appellant claimed the MJ3 definition of battery, which requires "willful use of force or violence upon the person of another," was unconstitutional because it did not match the NRS 200.481 definition of battery, which requires "willful *and unlawful* use of force or violence upon the person of another" (emphasis added). Appellant further contended that MJ3 requires an accompanying charge, such as MJ2, which adds the "unlawful" element. Appellant cited no authority for the proposition that prison disciplinary charges must match statutory definitions. Further, appellant failed to demonstrate any violation of a protected due process right. [Footnote 4: *See id.* [*Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1973)]. Accordingly, we conclude the district court did not err in denying this claim.

(Exhibit 16, at p. 2). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground 1 of the petition.

**B. Ground 2**

Petitioner claims that the hearing officer failed and refused to record exculpatory testimony of Officer Williams presented at the second disciplinary hearing held on February 10, 2005. (Docket #4, at p. 5). Petitioner claims that Officer Williams testified that he was mistaken and that petitioner never touched him, but that the tape recording was not running at the time. (*Id.*).

This Court has reviewed the transcript of the February 10, 2005 disciplinary hearing. (Exhibit 18). As indicated in the Warden's written response to petitioner's second administrative appeal, all of the disciplinary hearing was recorded except for petitioner's request for a plea negotiation. (Exhibit 7, at Exhibit 12). There is no federal requirement that disciplinary proceedings be recorded. Due process requires only that a factfinder make a written record of the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 565. The hearing officer in the instant case made a written record of the evidence relied upon – the officer's report and the inmate's plea and statement. (Exhibit 7, at Exhibit 3 and Exhibit 9). The hearing officer found petitioner guilty to two violations. (*Id.*). Petitioner has presented no evidence that the hearing officer refused to tape record any statements. Petitioner has presented no evidence that alleged exculpatory statements were made by Officer Williams. The Warden questioned Officer Williams and the hearing officer and found that no such statement was ever made. (*Id.*, at Exhibit 13, Exhibit 16).

Regarding petitioner's claim, the Nevada Supreme Court found and held:

> Second, appellant contended the hearing officer refused to record the disciplinary hearing. This claim is belied by the record. [Footnote 5:

7

> See Hargrove v. State, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984) (a petitioner is not entitled to an evidentiary hearing on claims that are belied by the record)]. In reviewing appellant's grievance relating to this claim, the warden found the hearing was recorded, with the exception of appellant's request to discuss a plea negotiation. Further, as a separate and independent ground for denying relief, this claim lacked merit. Even if the hearing was not recorded, a state's failure to comply with its own procedures is not a due process violation so long as the requirements of Wolff are met. [Footnote 6: Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Nev. Code of Penal Discipline § 707.04(1.3.6.1) (providing that it is only necessary that the disciplinary committee's finding of guilt be based upon some evidence, regardless of the amount). The requirements of Wolff were met in this case, and therefore, the district court did not err in denying this claim.

(Exhibit 16, at pp. 2-3). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground 2 of the petition.

**C. Ground 3**

Petitioner claims that there was no evidence that he had the intent to commit battery. (Docket #4, at p. 7). Petitioner claims that the hearing officer failed to acknowledge or understand his statement establishing an affirmative defense. Petitioner alleges that, from the beginning, he claimed that any touching was accidental due to his medical condition. Petitioner alleges that the hearing officer relied only on the reporting officer's written report and testimony, which was not enough to find him guilty of battery. (*Id.*).

On this claim, the Nevada Supreme Court found and held:

> Third, appellant contended the evidence was sufficient as there was no evidence the intended to strike the officer. Along with requirements set out in Wolff, the requirements of due process are met if some evidence supports the decision by the prison disciplinary committee. [Footnote 7: Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Nev. Code of Penal Discipline § 707.04(1.3.6.1) (providing that it is only necessary that the disciplinary committee's finding of guilt be based upon some evidence, regardless of the amount).] In this case,

> the notice of charges clearly indicated that appellant intended to strike Officer Williams. Further, appellant changed his explanation of the incident at least three times, once claiming he accidentally brushed against Officer Williams because he was in a hurry, then claiming he accidentally brushed him because he was dizzy due to low blood pressure, and once stating he may have brushed into the officer because he was trying to alert the officer to his dizziness. We therefore conclude that there was some evidence to support the finding, and the district court did not err in denying this claim.

(Exhibit 16, at p. 3). The factual findings of the Nevada state courts are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground 3 of the petition.

**D. Ground 4**

Petitioner claims that Officer Williams sought to file additional false disciplinary accusations against him in retaliation for petitioner's success in an early disciplinary appeal. (Docket #4, at p. 8-A). As to this claim, the Nevada Supreme Court found and held:

> Finally, appellant contended Officer Williams fabricated the charges in order to retaliate against appellant. Officer Williams had previously written a notice of charges against appellant. Appellant filed a grievance relating to those charges, and the charges were dismissed on November 23, 2004, two days before the incident at issue in this case. Other than his assertion that the dismissal "upset" Officer Williams, appellant stated no facts to support this allegation. [Footnote 8: See Hargrove, 100 Nev. at 502, 686 P.2d at 225 (holding that a petitioner is not entitled to an evidentiary hearing on "bare" or "naked" claims for relief that are unsupported by any specific factual allegations)]. There is no indication in the record that Officer Williams, or appellant, were even aware the charges had been dismissed. Accordingly, we conclude the district court did not err in denying this claim.

(Exhibit 16, at p. 4). The factual findings of the Nevada state courts are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established

1 federal law, as determined by the United States Supreme Court, or that it was based on an
2 unreasonable determination of the facts in light of the evidence presented in the state court
3 proceeding. This Court will deny habeas relief on Ground 4 of the petition.

**IV.     Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**V.     Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS THEREFORE ORDERED** that petitioner's motion for summary judgment (Docket #34) is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

DATED: November 6, 2008.

_____
PHILIP M. PRO
United States District Judge